**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
LISA FELTINGTON,

<table>
<tr><td>Plaintiff,</td><td><b>MEMORANDUM<br>AND ORDER</b></td></tr>
<tr><td>- against -</td><td></td></tr>
<tr><td></td><td>14-CV-6616 (ADS) (AKT)</td></tr>
</table>

HARTFORD LIFE INSURANCE COMPANY,

                              Defendant.
------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.     P̲ᴿᴱᴸᴵᴹᴵᴺᴬᴿʸ S̲ᴛᴀᴛᴇᴍᴇɴᴛ

      Plaintiff Lisa Feltington ("Plaintiff") brings this declaratory judgment action against

Defendant Hartford Life Insurance Company ("Hartford"), pursuant to the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, seeking, *inter alia*, an award

of long-term disability benefits under the employee welfare benefit plan provided to employees

of the North Shore-Long Island Jewish Hospital. *See generally* Complaint ("Compl.") [DE 1].

Plaintiff alleges that Hartford's decision to terminate payment of her long-term disability benefits

was arbitrary and capricious and was not supported by substantial evidence. *See id.* ¶ 40.

      Presently before the Court is Plaintiff's motion seeking certain discovery beyond the

administrative record. *See* Plaintiff's Letter Motion ("Pl.'s Mot.") [DE 17]. Specifically,

Plaintiff seeks an Order (1) directing Hartford to produce a witness under Federal Rule of Civil

Procedure 30(b)(6) ("Rule 30(b)(6)") to testify regarding Hartford's handling of correspondence

it received from Plaintiff after Hartford issued its decision on administrative appeal and closed

Plaintiff's file; (2) permitting Plaintiff to depose the doctor retained by Hartford to review

Plaintiff's medical documentation on appeal; and (3) compelling Hartford to answer three

interrogatories.  *Id.* at 2.  Hartford opposes the motion.  *See generally* Defendant's Opposition ("Def.'s Opp'n") [DE 18].  For the reasons set forth in this Memorandum and Order, Plaintiff's motion is GRANTED, in part, and DENIED, in part.

## II.    BACKGROUND

The following factual recitation is taken from the pleadings, the parties' motion papers, excerpts of the administrative record attached to the parties' submissions, and two extra-record documents submitted by Plaintiff.  Plaintiff was formerly employed by North Shore-Long Island Jewish Health System, Inc. ("North Shore") as an Assistant Director of Nursing.  Compl. ¶ 11. As an employee of North Shore, Plaintiff was a participant in the Group Long Term Disability Plan for Employees of North Shore ("the Plan"), an employee welfare plan governed by ERISA. *See* Def.'s Opp'n at 1; Compl. ¶¶ 9, 11.  Benefits under the Plan are funded by a group policy of insurance issued to North Shore by Hartford under group policy number GLT6745701.  Compl. ¶ 11; Def.'s Opp'n at 1.  Hartford administers claims for benefits under the Plan pursuant to a full grant of discretionary authority.  Def.'s Opp'n at 1; *see* Answer [DE 11], ¶¶ 10, 50; The Plan, annexed to Def.'s Opp'n as Ex. A, at 000024.[1]

Plaintiff left her job at North Shore on June 10, 2011 due to complaints of low back pain radiating into her legs and resulting in spasms and numbness in her feet, cervical spasms, and decreased range of motion due to a lumbar disc herniation with annular tear and facet joint hypertrophy.  Def.'s Opp'n at 1; *see* Compl. ¶ 13 (stating that Plaintiff suffered from lumbosacral disc degeneration, myalgia, myositis, cervicalgia and lumbago).  Hartford approved Plaintiff's claim for short-term disability benefits through maximum duration.  Def.'s Opp'n at 1.

---

[1]      Citations to the excerpts from the administrative record are referenced by the corresponding Bates stamp numbers.

After Plaintiff's short-term disability benefits were exhausted, Hartford forwarded her claim to its LTD Claims Unit. *Id.* Following review of the medical documentation Plaintiff submitted in support of her claim, Hartford approved Plaintiff's claim for long-term disability benefits from December 12, 2011 through January 10, 2014 under the Plan's "Own Occupation" definition of disability. *Id.*

On December 11, 2013, the definition of "disability" under the Plan changed. *See* Hartford Appeal Dec., annexed as Ex. A to Pl.'s Mot. [DE 17], at 000240. As of that date, the Plan required beneficiaries to be disabled from "Any Occupation" (rather than their "Own Occupation") in order to continue receiving long-term disability benefits. *See* Def.'s Opp'n at 2; Hartford Appeal Dec. at 000240.

Based on this Policy change, Hartford commenced a review of Plaintiff's claim for long-term disability benefits. *See* Def.'s Opp'n at 1-2. As part of this review, Hartford considered the Special Investigation Unit file associated with Plaintiff's claim, a Labor Market Analysis performed by a Hartford Vocational Rehabilitation Clinical Case Manager, and an Independent Medical Examination ("IME") of Plaintiff performed by Dr. Olugbenga Dawodu ("Dr. Dawodu").[2] *See id.* at 2. According to Hartford, it requested that independent vendor D&D Associates ("D&D") retain a physician board-certified in internal medicine and occupational medicine to perform the IME of Plaintiff. *Id.* at 2 n.2. D&D retained Dr. Dawodu, who is board-certified in these areas. *See id.* at 2. According to the Complaint, Dr. Dawodu found that Plaintiff was not disabled and that "there was no objective medical evidence of disability." Compl. ¶ 32.

---

[2]      Throughout the parties' submissions and in excerpts from the administrative record, the spelling of Dr. Dawodu's name varies. For consistency's sake, the Court will refer to him as "Dr. Dawodu" even where the cited source uses a different spelling.

By letter dated January 10, 2014, Hartford terminated Plaintiff's long-term disability benefits. *See* Hartford Appeal Dec. at 000240.[3] Hartford informed Plaintiff that she was no longer entitled to receive long-term disability benefits because, based upon its review of the information in her claim file, Hartford had determined that she was not prevented from performing the essential duties of "Any Occupation" as defined by the Plan. *Id.*; *see* Def.'s Opp'n at 2; Compl ¶ 14.

On June 6, 2014, Plaintiff filed an administrative appeal to reverse Hartford's adverse benefits determination. *See* Compl. ¶ 17; Pl.'s Mot. at 1. In support of her appeal, Plaintiff submitted, as relevant here, a May 16, 2014 Functional Capacity Evaluation Summary Report ("FCE Report") by Best Physical Therapy ("Best"). *See* FCE Report, annexed as Ex. 2 to Def.'s Opp'n, at 000391-000406; Compl. ¶ 24.[4] According to the FCE Report, Best's findings are based on a three-hour evaluation of Plaintiff performed by Susan Greenberg, M.S., P.T. ("Greenberg") at Best's Pelham office. *See* FCE Report at 000393. The FCE Report states that Plaintiff "underwent an intensive physical assessment and a comprehensive functional test" to

---

[3]      Neither party has provided the Court with a copy of Hartford's January 10, 2014 denial of benefits letter with their submissions.

[4]      According to the Complaint, in addition to the FCE Report, Plaintiff submitted the following documentation in support of her appeal: (1) a July 1, 2013 opinion of Dr. Teresa Farrugia ("Dr. Farrugia") which "concluded that Plaintiff was unable to work, and that Plaintiff was still experiencing pain after prolonged standing, and sitting"; (2) a clinical note by Dr. Andrew Porge (Dr. Porge") "which had stated that Plaintiff was suffering from joint pain, and that medication for arthritis had been prescribed"; (3) the opinion of Dr. Enrico Fazzini ("Dr. Fazzini"), a board-certified neurologist, which "concluded that Plaintiff was unable to perform work duties based on the results of nerve conduction studies that he had performed"; and (4) four MRI reports of Plaintiff's lumbar spine "which showed a progressive deterioration in the condition of her spine from May 29, 2007 to June 23, 2011," along with a "June 23, 2011 MRI report stating that she has disc desiccation and disc bulging with a posterior annual tear at the L4-5 level and facet joint hypertrophy L4-5 and L5-S-1, as well as sacral arachnoid cysts." Compl. ¶¶ 18-21.

determine, *inter alia*, her ability to perform "light work" for an eight hour-day, five days a week. *Id.* at 000403-000404. The FCE Report notes that Dr. Dawodu concluded based on his IME that Plaintiff could return to "light duty." *Id.* at 000404. However, the FCE Report concludes, among other things, that Plaintiff "is unable to perform 'light work,' based upon the Dictionary of Occupational Titles' Definition" and "is unable to work even at the sedentary level at this time." *Id.* at 000405. Specifically, the FCE Report states: "Ms. Feltington suffers from a variety of symptoms due to her diseases, causing profound and complex multifactorial limitations. She is unable to work at this time, and due to the chronic nature of her systemic diseases (*e.g.*, low back pain with radicular pain), at any time in the near future." *Id.* at 000406; *see also* Compl. ¶¶ 22-26 (summarizing conclusions regarding Plaintiff's physical limitations set forth in the FCE Report).

In considering Plaintiff's administrative appeal, Hartford "requested that independent medical record peer review vendor University Disability Consortium ('UDC') retain a board-certified orthopedist to review [Plaintiff's] records and provide an opinion concerning her functional capacity." Def.'s Opp'n at 2. UDC retained Dr. Neal Small ("Dr. Small"), a board-certified orthopedic surgeon, to perform this review. *See id.*

Dr. Small provided Hartford with a Medical Record Review report ("MRR"), dated September 12, 2014, regarding his review of Plaintiff's medical file. *See* MRR, annexed as Ex. B to Pl.'s Mot. [DE 17]. According to the MRR, Dr. Small reviewed the following documentation in Plaintiff's file: (1) MRI reports and x-ray reports; (2) records from Dr. Farrugia, Dr. Reginald Rosseau, M.D., Dr. Porges, and Dr. Fazzini; (3) Dr. Dawodu's IME report; (4) the FCE Report from Best; (5) and two surveillance videos of the Plaintiff. *See id.* at 000356-00361. In summarizing the FCE Report, the MRR states:

An unusual functional capacity evaluation, **which is unsigned**, is reviewed from Best Physical Therapy. This was performed on May 16, 2014. The pertinent findings from this evaluation purport that the claimant could only lift 16lbs, and only from a 24 inch high level. She could carry in front 16lbs and to either side 14lbs. She could push 42lbs and pull 43lbs. She was allegedly found to have a poor sitting tolerance. The individual who completed this report concluded that 'the claimant's physical abilities do not match the job description of a quality assurance coordinator' because:

> She could not sit for frequent and continuous periods of time without trunk flexion and rotation.
>
> She could walk only rarely.
>
> She could not reach overhead.
>
> She could only lift 16lbs from a 24 inch height.
>
> She could only side-carry 14lbs. Her right hand coordination was 'less than average; particularly, with fine and gross motor skills.'
>
> **The author of this report who is, at this time, anonymous**, concluded that the claimant was 'unable to do light work' and also concluded that the claimant was 'unable to do sedentary work.'

*Id.* at 000359-000360 (emphasis supplied). Ultimately, Dr. Small concluded that the "unsigned" FCE Report by Best "appears to be less than objective" because its findings "are inconsistent with the findings at the examination performed by Dr. Dawodu" as well as Plaintiff's "activity level displayed on the surveillance videos" observed by Dr. Small. *Id.* at 000362.

Under the subheading entitled "Attending Physician Contact Documentation," the MRR states that Dr. Small "ha[d] not been asked to contact an [Attending Physician] regarding the [Plaintiff]," but that he "ha[d] been asked to contact Best Physical Therapy Associates." *Id.* at 000361. According to Dr. Small,

> On August 9, 2014 at 2pm Central Standard Time I placed a call to [Best at] 914 708.6548. I reached a recorded voicemail message from a Karen Cavenaugh asking for me to leave a message. I left

> my name and return phone number. I called again on August 10, 2014 at 1:15 pm Central Standard Time again reaching voicemail. I left another message to return my call. On August 11, 2014 at 10:30 am Central Standard Time, I placed a third call and reached the same voicemail. Once again, I left a message to return my call.

*Id.* Thus, according to the MRR, Dr. Small never spoke with a representative at Best, despite his multiple attempts to do so.

Based on his review of Plaintiff's medical file, Dr. Small concluded that Plaintiff was capable of working an eight-hour workday, five days a week, at a sedentary job, with certain restrictions and limitations outlined in the MRR. *Id.* at 000362-000363. Dr. Small further notes in the MRR that his "medical opinions are independent of any claims decisions or the referring agency" and that he "ha[s] encountered no conflicts of interest in the performance of this review." *Id.* at 000356.

On September 26, 2014, Hartford issued a letter upholding its initial decision to terminate Plaintiff's claim for long-disability benefits under the Plan. *See* Hartford Appeal Dec., Pl.'s Mot., Ex. A. The letter, written by Hartford Appeals Specialist Raichelle Gibbs ("Gibbs"), states that Hartford's decision on appeal was based on "the Policy language and all documents contained in [Plaintiff's] claim file viewed as a whole," including Dr. Small's MRR and the IME completed by Dr. Dawodu. *Id.* at 000239-000240. The letter summarizes, *inter alia*, the records reviewed by Dr. Small and his findings with respect to those records, including the FCE Report by Best. *See id.* at 000242. Specifically, the letter reiterates Dr. Small's notations in the MRR that the FCE Report is "unsigned" and that the author of the report is "unknown." *Id.* at 000242-000243. The letter further states that Dr. Small "attempted to contact Best Physical Therapy Associates on August 9, 2014, August 10. 2014 and August 11, 2014 to discuss [Plaintiff's]

current level of function. His calls have not been returned to date." *Id.* at 000242. The letter concludes, as relevant here:

> The restrictions and limitations outlined by Dr. Dawodu on November 20, 2013 and by Dr. Small on September 12, 2014 would not preclude [Plaintiff] from performing Any Occupation as defined in the LTD Policy. The FCE submitted on appeal from Best Physical Therapy Associates has not been signed. ·The author of the report remains unknown at this time. The weight of the medical evidence supports that [Plaintiff] is capable of performing Light Work.

*Id.* at 000243.

Hartford's letter concludes that the decision to terminate Plaintiff claim was a "final determination" and that Hartford would be closing its record on Plaintiff's claim. *Id.* at 000244. The letter further states: "Please be advised that you have exhausted any administrative remedies available to your client under the Policy and we have closed her claim file at this time. No further review will be conducted with respect to her claim." *Id.*

On October 16, 2014, Plaintiff's counsel contacted Gibbs by letter regarding Hartford's decision to uphold its denial of benefits and, specifically, Hartford's reliance on "a statement from Dr. Small alleging that his calls to Best Physical Therapy Associates were not returned." Pl.'s Oct. 16, 2014 Ltr., annexed to Pl.'s Mot. as Ex. C [DE 17]. Counsel notes that Dr. Small's statement "not only places the [Best] facility in an unfavorable light but infers that information to support the denial of this claim would have been obtained." *Id.* Counsel further states that, upon forwarding a copy of Hartford's decision to Best, he received a response from Greenberg on October 14, 2014. *See id.* Greenberg's response, which counsel included with his letter to Gibbs, states that following:

> I am in receipt of the letter you forwarded to me from The Hartford regarding Ms. Lisa Feltington. I performed a Functional Capacity Evaluation (FCE) on May 16, 2014, on Ms. Feltington. The

Hartford letter insinuates that the author of the report is unknown, but I bring your attention to the very first page of the report, which indicates that the FCE was performed by me at our Pelham facility. Further, I feel that the letter consistently misquotes me and takes information out of context. This is grossly unfair. The FCE is a three-hour examination conducted by a Physical Therapist, where the client actually performs a variety of work related tasks. The data is collected and analyzed. A comprehensive report is written, which includes a list of at least 11 consistency checkpoints. This is not an IME, where the patient is examined only briefly. Rather, it is based on actual functional ability observed by a Physical Therapist with specific training in this highly skilled test, directing and monitoring 30 different tasks that cross validate each other. In addition, an extensive physical assessment is done before the testing so that the therapist can assess the client's level of condition and strength for safety reasons, before the testing begins.

The letter goes on to say that Dr. Small called the BEST office on August 9, 10, and 11th. Dr. Small did call once and left a message for me to call him back, which I did. He wanted to ask me questions about the FCE but I informed him that I would need to reread the file as it had been some time since the FCE had been performed. Dr. Small indicated that I should call him back after I had a chance to review the file. I asked a member of my office staff to phone him and ask him to submit a list of written questions that he had about the FCE so that I could be prepared for the next phone call. I was told that the call had been placed to him and a message had been left. To my knowledge, Dr. Small never called back.

I remain more than willing to answer any specific questions that Dr. Small or the Hartford have regarding Ms. Feltington's FCE. Please have them submit these questions to me in writing so that we can arrange a mutually convenient conference call.

*Id.*

In his letter to Gibbs, Plaintiff's counsel stated that Greenberg's response makes clear that "the events described by Dr. Small never occurred." *Id.* Counsel further asserts that "Dr. Small's tactics show a clear bias, and a denial of the claimant's statutory right to a full and fair review of her claim." *Id.*

## III.  <span class="smallcaps">THE INSTANT MOTION</span>

Plaintiff now seeks to conduct discovery beyond the administrative record.  *See generally* Pl.'s Mot.  In her motion, Plaintiff states that Hartford "used Dr. Small's version of events" to support its decision to affirm the denial of Plaintiff's long-term disability benefits.  *Id.* at 2.  Specifically, Hartford "disparage[ed]" the FCE Report "by stating that Dr. Small's calls to Best Physical Therapy to discuss Plaintiffs level of function had not been returned" and by "repeat[ing] Dr. Small's comment that Best's report was unsigned and that the author remains unknown."  *Id.* (citing Hartford Appeal Dec. at 000242-000243).  Plaintiff has submitted with her motion a copy of the October 16, 2014 letter from Plaintiff's counsel to Gibbs and the October 14, 2014 letter from Greenberg (collectively, "the Letters").  *See id.*, Ex. C.  Plaintiff points out that the October 14, 2014 letter from Greenberg "vigorously disputed Dr. Small's version of events."  Pl.'s Mot. at 2.  Plaintiff further notes that the Letters have not been included as part of the administrative record and there is no indication in the record that "Hartford contacted Dr. Small to learn his version of events."  *Id.*  According to Plaintiff,

> Dr. Small's report did not challenge the methodology utilized in the Best report or the professional opinion rendered.  If Dr. Small's version of events was wrong, then Hartford would have no excuse of ignoring the report's uncontested conclusion.  It is clear that Hartford relied on his dismissive comments as he had no objection that went to the merits of Best's report.

*Id.*

In light of the foregoing information, Plaintiff seeks the following extra-record discovery: (1) a Rule 30(b)(6) deposition of Hartford regarding its "handling" of the Letters; (2) a deposition of Dr. Small regarding his conversations with Greenburg from Best; and (3) responses from Hartford to the following three interrogatories:

> 1) State whether Defendant, Hartford Insurance Company, has both discretionary authority and made long term disability payments to Plaintiff pursuant to The Plan under Hartford Group Policy GL6745701.
>
> 2) State the number of times that Defendant received a medical review of a long term disability claim from Dr. Neal Small of the University Disability Consortium and the number of times that he found the claimant to be disabled.
>
> 3) State the number of times that Defendant received a medical review of a long term disability claim from Dr. Olugbenga Dawodu and the number of times that he found the claimant to be disabled.

*Id.* at 2; Pl.'s Interrogatories, annexed to Pl.'s Mot. as Ex. D.

Plaintiff asserts that she has demonstrated "good cause" to conduct this additional discovery. *See* Pl.'s Mot. at 4. Primarily, Plaintiff points out that a "structural conflict of interest" exists here because Hartford "performs the dual role of evaluating claims for benefits and paying benefits" under the Plan. *Id.* at 3. Acknowledging that this conflict is not, by itself, sufficient to warrant extra-record discovery, Plaintiff further contends that (1) there were "procedural problems" with Hartford's administrative appeals process; (2) Dr. Small was biased and "cease[d] exercising his independent medical judgment" with respect to his evaluation of the FCE Report; and (3) UDC, the entity which employs Dr. Small, derives substantial portion of its revenue from Hartford. *See id.* at 3-4.

Hartford opposes Plaintiff's motion, arguing that Plaintiff has not shown that she entitled to any of the extra-record discovery she seeks. *See generally* Def.'s Opp'n. As a preliminary matter, Hartford contends that the Court should limit its review on this motion to administrative record and strike the Letters submitted by Plaintiff. *See id.* at 3 n.3. Hartford further contends that there is no need for Plaintiff to conduct a Rule 30(b)(6) deposition regarding the Letters because those documents are outside of the scope of the administrative record as a matter of law

and Hartford informed Plaintiff that it would not perform any further reviews in its letter upholding its adverse benefits determination. *Id.* at 3-4. As for the Plaintiff's request to depose Dr. Small, Hartford argues that such discovery "is completely inappropriate in this case governed by ERISA" and notes that Plaintiff "fails to cite any case law demonstrating that this type of discovery is appropriate or has ever been granted in an ERISA case." *Id.* at 4. Finally, Hartford asserts that Plaintiff has also "fail[ed] to identify any 'good cause' showing regarding her purported entitlement to responses to her three proposed interrogatories." *Id.* at 5.

## IV.    APPLICABLE LAW

### A.    Standard Of Review

"ERISA does not set out the applicable standard of review for actions challenging benefit eligibility determinations." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002) (quoting *Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 49 (2d Cir.1996)) (quotation marks omitted). However, the Supreme Court has held that "a denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 738 (2d Cir. 2001) ("[W]here a plan does confer discretion upon the administrator to determine eligibility or interpret the terms of the plan, the determinations of the administrator are reviewed under an abuse of discretion standard."). "When such discretionary authority is reserved, a court 'will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious.'" *S.M. v. Oxford Health Plans (N.Y.), Inc.* ("*S.M. II*"), 94 F. Supp. 3d 481, 497 (S.D.N.Y. 2015) (quoting *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009)) (internal quotation marks

omitted); *see Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995)). "The plan administrator bears the burden of proving that the deferential standard of review applies." *Fay*, 287 F.3d at 103; *see Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 109 (2d Cir. 2005)).

Here, the parties agree that that the arbitrary and capricious standard of review applies. *See* Compl. ¶ 40; Pl.'s Mot at 1; Def.'s Opp'n at 3. The Policy provides that Hartford "ha[s] full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy," specifically "where the interpretation of The Policy is governed by . . . [ERISA]." The Plan, Def.'s Opp'n, Ex. 1, at 00024. Because the Policy "provides [Hartford] with full discretionary authority to determine eligibility, the Court agrees that the appropriate standard of review is 'arbitrary and capricious.'" *Rubino v. Aetna Life Ins. Co.*, No. 07-CV-377, 2009 WL 910747, at *2 (E.D.N.Y. Mar. 31, 2009) (collecting cases).

### B. Standards for Admission of Evidence Outside the Administrative Record

In an ERISA case applying the arbitrary and capricious standard, "the presumption is that review is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence." *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003); *see Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 631 (2d Cir. 2008) ("We have repeatedly said that a district court's decision to admit evidence outside the administrative record is discretionary, 'but which discretion ought not to be exercised in the absence of good cause.'") (quoting *Juliano v. Health Maint. Org. of New Jersey, Inc.*, 221 F.3d 279, 289 (2d Cir. 2000)); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995). "[T]he reasonableness of the administrator's decision [to deny benefits] is not an issue that courts will permit evidence beyond the administrative record." *Paris-Absalom v. Aetna Life Ins. Co.*, No. 11-CV-0610, 2012 WL 4086744, at *2 (E.D.N.Y. Sept. 17, 2012) (citing, *e.g.*, *Zervos v.*

*Verizon N.Y., Inc.*, 252 F.3d 163, 174 (2d Cir. 2001)). However, courts are not necessarily confined to the administrative record when determining whether an administrator's decision was affected by a conflict of interest, "an issue[] which is distinct from the reasonableness of the plan administrator's decision [to deny benefits]." *Zervos*, 252 F.3d at 174 (citing *Firestone*, 489 U.S. at 115 ("if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion") (internal quotation marks and brackets omitted)); *accord McCarthy-O'Keefe v. Local 298/851 IBT Employer Grp. Pension Trust Fund*, No. 13-CV-4785, 2015 WL 783352, at *6 (S.D.N.Y. Feb. 24, 2015); *see Trussel v. Cigna Life Ins. Co. of N.Y.*, 552 F. Supp. 2d 387, 390 (S.D.N.Y. 2008) (collecting cases).

A plan administrator is considered conflicted when that administrator "both evaluates claims for benefits and pays benefits claims." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). Such a conflict is known as a "structural conflict of interest." *See, .e.g.*, *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009). The Supreme Court has stated that courts should consider a structural conflict of interest as "a factor in determining whether the plan administrator has abused its discretion in denying benefits[,] and that the significance of the factor will depend upon the circumstances of the particular case." *Glenn*, 554 U.S. at 108 (citing *Firestone*, 489 U.S. at 115). Thus, the fact that a plan administrator is structurally conflicted "does not change the court's deferential standard of review but must be weighed as a factor in determining whether there was an abuse of discretion." *Puri v. Hartford Life & Acc. Ins. Co.*, 784 F. Supp. 2d 103, 105 (D. Conn. 2011) (citing *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008)).

It is well established in the Second Circuit that a structural conflict of interest does not *per se* constitute good cause to consider additional evidence outside of the administrative record. *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 294–96 (2d Cir. 2004) (clarifying holding in *DeFelice v. Am. Int'l Life Assurance Co. of N.Y.,* 112 F.3d 61 (2d Cir. 1997) and stating: "We hold that a conflicted administrator does not *per se* constitute good cause, and caution district courts that a finding of a conflicted administrator alone should not be translated *necessarily* into a finding of good cause.") (emphasis in original); *accord S.M. II*, 94 F. Supp. 3d at 506 ("'Although a Defendant's demonstrated conflict of interest may be an example of good cause, a conflicted administrator does not *per se* constitute good cause.'") (quoting *Wedge v. Shawmut Design & Const. Grp. Long Term Disability Ins. Plan*, 23 F. Supp. 3d 320, 337 (S.D.N.Y. 2014)) (alteration omitted); *Durham v. Prudential Ins. Co. of Am.*, 890 F. Supp. 2d 390, 396 (S.D.N.Y. 2012). As the Second Circuit explained in *Locher*, such "a *per se* rule would effectively eliminate the 'good cause' requirement and the discretion afforded to district courts in deciding whether to admit additional evidence, because claims reviewers and payors are almost always either the same entity or financially connected in some other way." 389 F.3d at 295 (citations omitted); *see also S.M. II*, 94 F. Supp. 3d at 506 (noting that, in effect, a *per se* rule "would 'undermine the significant ERISA policy interests of minimizing costs of claim disputes and ensuring prompt claims-resolution procedures.'") (quoting *Locher*, 94 F. Supp. 3d at 506).

However, a structural conflict of interest "can rise to the level of 'good cause' when bolstered by specific allegations." *Durham*, 890 F. Supp. 2d at 396 (quoting *Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 831 F.Supp.2d 651, 658 (S.D.N.Y. 2011)); *accord Puri*, 784 F. Supp. 2d at 106; *see also S.M. II*, 94 F. Supp. 3d at 506 ("Typically, district courts 'have emphasized a plaintiff's burden to allege facts, with sufficient specificity, that would support the

existence of good cause permitting the admission of additional evidence beyond the administrative record.'") (quoting *Krizek v. Cigna Grp. Ins.*, 345 F.3d 91, 98 n. 2 (2d Cir. 2003)) (internal quotation marks omitted). For example, "the Second Circuit has determined that 'good cause' exists when the procedures employed in arriving at the claim determination were flawed, and when an insurer's claimed reason for denying a claim was not stated in its notices to the claimant." *Biomed Pharm.*, 831 F. Supp. 2d at 658-59 (quoting *Locher*, 389 F.3d at 295); *accord S.M. II*, 94 F. Supp. 3d at 506. Ultimately, "the decision to consider information outside the administrative record is a discretionary one even where there is 'good cause.'" *Locher*, 389 F.3d at 295 (quoting *Critchlow v. First Unum Life Ins. Co. of Am.*, 340 F.3d 130, 133 n.2 (2d Cir. 2003), *withdrawn and vacated on reconsideration on other grounds*, 378 F.3d 246 (2d Cir. 2004)).

### C.       Standards To Determine Whether To Allow Additional Discovery

Where a plaintiff contends that a benefits determination was tainted by the plan administrator's conflict of interest, "'[i]t logically follows that some amount of discovery is necessary, to enable the Court to determine the extent and nature of the conflict and the appropriate weight to give this conflict in the ultimate merits analysis,' *i.e.*, to enable the Court to determine whether [administrator's] conflict of interest affected the reasonableness of the administrator's benefits decision." *Murphy v. First Unum Life Ins. Co.*, No. 15-CV-820, 2016 WL 526243, at *5 (E.D.N.Y. Feb. 9, 2016) (quoting *Tretola v. First Unum Line Ins. Co.*, No. 13-CV-231, 2013 WL 2896804, at *3 (S.D.N.Y. June 13, 2013)) (internal alteration omitted); *see also Wagner v. First Unum Life Ins. Co.*, 100 F. App'x 862, 864 (2d Cir. 2004) (summary order) ("[D]iscovery may be appropriate in some cases where a petitioner seeks to show a conflict of interest[.]"). Thus, courts may permit extra-record discovery "relating to [a] conflict, since much

of the relevant information would not have been part of the administrative record, but not discovery into the substantive merits of the claim." *Murphy*, 2016 WL 526243, at *5 (quoting *Schrom v. Guardian Life Ins. Co.*, No. 11-CV-1680, 2012 WL 28138, at *4 (S.D.N.Y. Jan. 5, 2012)) (internal quotation marks and alteration omitted) (citing *Tretola*, 2013 WL 2896804, at *2-3 (agreeing with *Schrom*'s analysis)); s*ee McDonnell v. First Unum Life Ins. Co.*, No. 10-CV-08140, 2011 WL 5301588, at *5 (S.D.N.Y. Nov. 3, 2011) ("A plaintiff is entitled to seek discovery through depositions in order to determine information 'relevant to the issue of whether the plan administrator had a conflict of interest when it terminated plaintiff's benefits.'") (quoting *Sheehan v. Metropolitan Life Ins. Co.*, No. 01-CV-9182, 2002 WL 1424592, *6 (S.D.N.Y. June, 28 2002)). "If discovery is allowed, the plaintiff can then apply to the district judge for a determination as to whether she will expand the record to include information that discovery yielded, the nature of which is not yet known." *Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 229 (E.D.N.Y. 2008). "Thus, even if discovery outside the administrative record is permitted, a plaintiff must then make a showing of good cause before the district court may consider the information obtained via discovery in reviewing a plan administrator's benefits determination." *Pretty v. Prudential Ins. Co. of Am.*, 696 F. Supp. 2d 170, 182 (D. Conn. 2010).

Significantly, "the decision as to whether to allow discovery is distinct from the decision as to whether to allow consideration of additional evidence." *Burgio*, 253 F.R.D. at 229; *accord Schrom*, 2012 WL 28138, at *3. Where, as here, the plaintiff seeks to obtain through discovery evidence outside of the administrative record, the plaintiff "need not make a full good cause showing, but must show a reasonable chance that the requested discovery will satisfy the good cause requirement." *Rubino*, 2009 WL 910747, at *4 (quoting *Trussel*, 552 F. Supp. 2d at 390) (internal quotation marks and citations omitted); *Durham*, 890 F. Supp. 2d at 397 (collecting

cases); *Burgio*, 253 F.R.D. at 230–31 (same); *see also Schrom*, 2012 WL 28138, at *3 ("[D]iscovery is only permitted where it is reasonably likely that the requested information will satisfy the good cause requirement."). As noted by this Court in an earlier decision, "[i]f a plaintiff were forced to make a full good cause showing just to obtain discovery, then he would be faced with a vicious circle: To obtain discovery, he would need to make a showing that, in many cases, could be satisfied only with the help of discovery." *Rubino*, 2009 WL 910747, at *4 (quoting *Anderson v. Sotheby's Inc. Severance Plan*, No. 04 Civ. 8180 (S.D.N.Y. May 31, 2005)). "The good cause standard required to obtain evidence beyond the administrative record through discovery is therefore less stringent than when requesting that the court consider such evidence in its final determination." *Burgio*, 253 F.R.D. at 230 (quoting *Trussel*, 552 F. Supp. 2d at 390–91) (internal alterations omitted); *see Schrom*, 2012 WL 28138, at *3.

However, where a plaintiff contends that the plan administrator had a conflict of interest, he or she cannot obtain discovery outside of the administrative record "merely by making conclusory allegations." *Laakso v. Xerox Corp.*, No. 08-CV-6376, 2011 WL 3360033, at *4 (W.D.N.Y. Aug. 3, 2011) (citing quoting *Baird v. Prudential Ins. Co. of Am.*, No. 09-CV-7898, 2010 WL 3743839, at *9 (S.D.N.Y. Sept. 24, 2010) *aff'd*, 458 F. App'x 39 (2d Cir. 2012)). "Instead, the plaintiff must make 'specific factual allegations' to support the discovery request." *Id.* (quoting *Quinones v. First Unum Life Insur. Co.*, No. 10-CV-8444, 2011 WL 797456 at *2 (S.D.N.Y. Mar.4, 2011)); *see S.M. v. Oxford Health Plans (NY), Inc.* (*S.M. I*), No. 12-CV-4679, 2014 WL 1303444, at *4 (S.D.N.Y. Apr. 1, 2014) ("The plaintiff must . . . provide case-specific allegations tending to show a conflict of interest.").

To that end, it is well-settled that "the party seeking additional discovery must do more than merely claim that 'it is needed to determine whether she received a 'full and fair review.'"

*Hamill v. Prudential Ins. Co. of Am.*, No. 11-CV-1464, 2012 WL 6757211, at *10 (E.D.N.Y.

Sept. 28, 2012) *report and recommendation adopted*, 2013 WL 27548 (E.D.N.Y. Jan. 2, 2013)

(quoting *Burgio*, 253 F.R.D. at 232).  Moreover, a structural conflict of interest is not sufficient

by itself to permit extra-record discovery and "a party seeking to conduct discovery outside the

administrative record must allege more than a mere conflict of interest."  *Rubino*, 2009 WL

910747, at *4; *see, e.g.*, *Paris-Absalom*, 2012 WL 4086744, at *2 ("'It is well-established that a

conflict of interest does not *per se* constitute good cause for discovery of evidence outside of the

administrative record, and while a full good cause showing is not required to obtain discovery, a

party seeking to conduct discovery outside the administrative record must allege more than a

mere conflict of interest.'") (quoting *Baird*, 2010 WL 3743839 at *9 (internal quotation marks

omitted)); *Boison v. Ins. Servs. Office, Inc.*, 829 F. Supp. 2d 151, 160-61 (E.D.N.Y. 2011)

("Boison has merely alleged the structural conflict of interest that obviously exists and is

acknowledged by the Defendant.  This allegation alone would be insufficient for this Court to

grant additional discovery."); *Varney v. NYNEX Mgmt. Pension Plan*, No. CV 07-695, 2011 WL

6934773, at *5 (E.D.N.Y. Dec. 30, 2011) ("The fact that Verizon is both the plan administrator

and plan sponsor is not alone sufficient to warrant discovery outside the administrative record.");

*Pretty*, 696 F. Supp. 2d at 182 ("The mere appearance of a conflict alone is insufficient to meet

the reasonable chance standard.").

"To satisfy the requirement that plaintiff shows a reasonable chance that the requested

discovery will satisfy the good cause requirement, a variety of assertions have been deemed

sufficient."  *Hamill*, 2012 WL 6757211, at *10 (internal quotation marks omitted).  For example,

"[t]hat standard may be met where the Plaintiff demonstrates a conflict of interest 'as well as

some additional factor, such as lack of established criteria for determining an appeal, a practice

of destroying or discarding all records within minutes after hearing an appeal, or a failure to maintain written procedures for claim review.'" *Andrews v. Realogy Corp. Severance Pay Plan for Officers*, No. 13-CV-8210, 2015 WL 736117, at *8 n.8 (S.D.N.Y. Feb. 20, 2015) (quoting *Pretty*, 696 F. Supp. 2d at 183); *see Boison*, 829 F. Supp. 2d at 160 (quoting *Locher*, 389 F.3d at 293). "Expanded discovery may also be permitted to test the adequacy of the administrative record." *Gill v. Bausch & Lomb Supplemental Ret. Income Plan I*, No. 09-CV-6043, 2011 WL 2413411, at *5 (W.D.N.Y. June 10, 2011) (citing *Nagele v. Elec. Data Sys. Corp.*, 193 F.R.D. 94, 105 (W.D.N.Y. 2000)).

Moreover, plausible allegations of "procedural irregularities" in the administrative review process, considered in conjunction with a structural conflict of interest, may be sufficient to show that a plaintiff has a reasonable chance of success in meeting the good cause standard. *S.M. I*, 2014 WL 1303444, at *4 (additional discovery warranted whether the plaintiff alleged that the insurer's "non-specialist Medical Director" did not consider particular medication the plaintiff was taking or an accompanying authorization report); *Varney*, 2011 WL 6934773, at *5 (discovery outside administrative record warranted where "procedural irregularities" existed, such as the insurer's "unexplained reversal of its initial decision that Plaintiff was eligible for benefits," email correspondence showing the insurer "may have improperly pressured [an employee] to reverse its decision regarding Plaintiff's claim, and the insurer's refusal to provide the plaintiff with a claim form when he requested one in 2006); *Garban v. Cigna Life Ins. Co. of New York*, No. 10-CV-5770, 2011 WL 3586070, at *3 (S.D.N.Y. Aug. 11, 2011) ("Discovery is permitted so that plaintiffs may uncover these procedural irregularities.") *Burgio*, 253 F.R.D. at 232 (additional discovery warranted where the plaintiff asserted "that his eligibility for LTD benefits was tied to his eligibility for other monetary benefits" and he "posited numerous specific

reasons he believes that he is entitled to discovery, including allegedly inappropriate correspondence between Defendant and the medical providers who determined Plaintiff's eligibility for LTD benefits"); *but see Yasinoski v. Connecticut Gen. Life Ins. Co.*, No. 07-CV-2573, 2009 WL 3254929, at *11 (E.D.N.Y. Sept. 30, 2009) (denying additional discovery where "the excerpts from the administrative record presented . . . do not reflect the material discrepancies alleged by Plaintiff" and the plaintiff failed to "provide[] specific examples from the administrative record showing that Prudential exerted improper influence over Plaintiff's treating physician or other reviewing doctors resulting from, for example, prior relationships between Prudential and the doctors or questionable incentive structures"); *Baird*, 2010 WL 3743839, at *7 (denying additional discovery where the plaintiff did not "suggest that Defendant's conflict actually affected its benefit determination" and noting that the plaintiff "cannot avoid summary judgment through conclusory assertions that discovery *might* reveal some infirmity in Defendant's decision-making.").

Ultimately, the plaintiff "must show that the specific items of discovery he seeks have a reasonable chance of helping him meet [the good cause] requirement." *Garban*, 2011 WL 3586070, at *3; *see, e.g.*, *Liyan He v. Cigna Life Ins. Co. of New York*, 304 F.R.D. 186, 189 (S.D.N.Y. 2015) (limiting discovery to "a single deposition of a Cigna employee as to the procedural administration of plaintiff's claim and . . . the examination of the written evaluations of some key employees involved in the decisionmaking on plaintiff's claim," and noting that "the goal of this discovery will be only to determine whether there are conflicts or procedural irregularities that bear on the question of whether the existing administrative record is incomplete"); *McDonnell*, 2011 WL 5301588, at *5 (permitting the plaintiff to take two deposition but limiting the scope of those deposition "to ascertaining facts relating to the issue of

whether the bases for their determinations were affected by a conflict of interest, as this information is unlikely to be found in the administrative record").

## V.    <span style="font-variant: small-caps;">DISCUSSION</span>

As noted, Plaintiff seeks to conduct a Rule 30(b)(6) deposition of Hartford regarding its consideration of the Letters, and a deposition of Dr. Small regarding his conversations with Greenburg at Best.  *See* Pl.'s Mot. at 2.  In addition, Plaintiff seeks to compel Hartford to respond to interrogatories concerning:  (1) whether Hartford both pays and administers claims for benefits under the Plan; (2) how many times Dr. Small and Dr. Dawodu have performed medical reviews for Hartford and the amount of times each doctor "found a claimant to be disabled." *See id.*; *id.* at Ex. D.  The Court will consider each of these discovery requests in turn.

### A.    Rule 30(b)(6) Deposition of Hartford

Plaintiff contends that good cause exists to compel Hartford to produce a Rule 30(b)(6) witness to testify regarding Hartford's "handling" of the Letters.  *See id.* at 2.  Plaintiff seeks this discovery (1) "to learn why the letter from Best Physical Therapy was omitted from the administrative record," (2) "whether Hartford ever contacted Dr. Small to learn his response [to the letter from Best]," and (3) "if not, why not, and why [Hartford] did not contact [Plaintiff's] counsel . . . if Best Physical Therapy was not responsive." *Id.*  According to Plaintiff, Hartford's failure to consider the letters demonstrates that "Hartford either had no process or failed to follow its own appeals process for re-considering important information when [the] truthfulness of its consultant had been contradicted." *Id.* at 3.  Plaintiff appears to assert that the procedures Hartford employed in upholding its adverse benefits determination were flawed because either (1) Hartford's procedures do not provide for reopening an administrative appeal when a claimant submits new information which contradicts statements made by a doctor retained by Hartford, or

(2) Hartford has procedures for reopening an appeal but failed to properly follow them here. *See id.* Plaintiff further suggests that Hartford's "appeals process" may be "to simply believe its paid experts rather than a claimant's experts under any circumstances." *Id.*

In opposition, Hartford contends that Plaintiff's argument that she is entitled to depose a Rule 30(b)(6) witness "concerning why her extra-record submissions were not included in the administrative record or considered by Hartford is entirely without merit." Def.'s Opp'n at 3. Citing several cases from the Second Circuit, Hartford notes that "the administrative record is comprised of all of the documentation the claim fiduciary considered at the time it rendered its final appeal determination." *Id.* (citing, *e.g.*, *Schussheim v. First Unum Life Ins. Co.*, 80 F. Supp. 3d 360, 374 (E.D.N.Y. 2015)). Based on this precedent, Hartford asserts that the Letters "cannot be considered part of the administrative record" as a matter of law because they were submitted to Hartford after it issued the final adverse benefits determination on September 26, 2014. Def.'s Opp'n at 3. Hartford further maintains (without citation to supporting case law) that "this Court should strike the letters . . . because they are outside the administrative record and should not be reviewed by this Court." *Id.* at 3 n.3. Ultimately, Hartford contends that, since "the scope of the administrative record is well defined in the case law" and "Hartford informed [Plaintiff] that it would not perform any further reviews in its final adverse determination letter . . . , there is no need for a Rule 30(b)(6) witness to testify on this issue, which is an issue of law – not fact." *Id.* at 4.

The Court will first address Hartford's request that the Court strike the letters as beyond the administrative record. The Court agrees with Hartford that the letters are outside the scope of the administrative record because they were not before Hartford when it considered Plaintiff's

administrative appeal.  In fact, the letters were created after (and in reaction to) Hartford's decision to uphold its denial of long-term disability benefits.

Contrary to Hartford's contentions, however, the Court need not to strike the Letters on this basis.  It is well-settled that "'[t]he administrative record consists of the documents before the claims administrator when the decision regarding benefits was made.'"  *S.M. II*, 94 F. Supp. 3d at 505 (quoting *Novick v. Metro. Life Ins. Co.*, 914 F. Supp. 2d 507, 521 (S.D.N.Y. 2012)); *see Rund v. JPMorgan Chase Grp. Long Term Disability Plan*, No. 10-CV-5284, 2012 WL 1108003, at *1 (S.D.N.Y. Mar. 30, 2012) (citing *Krizek v. Cigna Group Ins.*, 345 F.3d 91, 97 (2d Cir. 2003)).  It is also established that the court's review in ERISA cases applying the arbitrary and capricious standard of review is presumed to be "limited to the record in front of the claims administrator."  *Muller*, 341 F.3d at 125.  However, as already pointed out, this presumption may be overcome if "the district court finds good cause to consider additional evidence" from outside the administrative record.  *Id.*; *see, e.g.*, *Schrom*, 2012 WL 28138, at *3 (collecting cases).  Specifically, "[a] court is permitted to consider extra-record evidence that relates to an insurer's conflict of interest," *Novick*, 914 F. Supp. 2d at 521, even if that evidence was created after the administrative record was closed.  *Cf. Reid v. Aetna Life Ins. Co.*, 393 F. Supp. 2d 256, 263 (S.D.N.Y. 2005) ("A court may not consider materials that were created after the administrative record was closed, absent a showing of bad faith or a conflict of interest."); *Salute v. Aetna Life Ins. Co.*, No. 04-CV-2035, 2005 WL 1962254, at *6 (E.D.N.Y. Aug. 9, 2005) ("Salute, however, may not ask this Court to improperly re-open the administrative record to permit admission of evidence that arose after the record closed unless he can show that Aetna acted pursuant to a conflict of interest or that Aetna denied him the opportunity to present evidence during his administrative appeal.") (citing *Locher*, 389 F.2d at 295).

Here, the question of whether the administrative record should be expanded to include the Letters is not before this Court, and it would not be proper for this Court to rule on that issue at this time. If Plaintiff seeks to have the Letters included in the record going forward, she must make a proper application for that relief. *See Burgio*, 253 F.R.D. at 229. At this point, Plaintiff has submitted the letters to support her assertion that, if permitted to conduct the extra-record discovery she seeks here, there is a reasonable chance that the evidence she obtains will satisfy the good cause standard. *See* Pl.'s Mot. at 2-4. Hartford has not cited any case law to support its request to strike the letters, let alone any case law stating that a court may not consider extra-record documents in determining whether to permit additional discovery in an ERISA matter. Accordingly, Hartford's request to strike the letters at this juncture is DENIED.

The Court now considers whether Plaintiff has shown that the Rule 30(b)(6) deposition she seeks has a reasonable chance of helping her meet the good cause requirement. *Garban*, 2011 WL 3586070, at *3. Considering Plaintiff's arguments in light of the applicable standards, the Court finds that Plaintiff has not succeeded in demonstrating her entitlement to this discovery. Under certain circumstances, a court may permit extra-record discovery to "test the adequacy of the administrative record" and ensure that it is complete. *Gill*, 2011 WL 2413411, at *5; *see Liyan He*, 304 F.R.D. at 189. Here, the Court does not see the utility of permitting Plaintiff to question a Hartford representative about why the Letters were not included in the administrative record since, as just outlined, these documents were not part of that record since they were created *after* Hartford decided Plaintiff's administrative appeal and concluded its review. *See generally S.M. II*, 94 F. Supp. 3d at 505.

Likewise, the Court is not convinced that the purported procedural "flaw" identified by Plaintiff is sufficient to warrant the additional discovery sought here. Plaintiff asserts that

Hartford's failure to follow up with Dr. Small, Plaintiff's counsel, or Best upon its receipt of the Letters evidenced Hartford's failure to either "follow its own appeals process" or implement such a process "for re-considering important information when [the] truthfulness of its consultant had been contradicted." Pl.'s Mot. at 3. Citing *Locher*, Plaintiff suggests that this procedural flaw, considered in conjunction Hartford's structural conflict of interest, demonstrates her entitlement to additional discovery. *See id.* at 3-4. However, *Locher* does not support this proposition. In *Locher*, the Second Circuit held "that the District Court's finding of good cause is bolstered in part by the finding that there were insufficient procedures for internal or appellate review," namely, "that 'UNUM had no written procedures for claims review.'" 389 F.3d at 296. Critically, nothing in *Locher* indicates that a plan administrator's failure to implement procedures for considering post-appeal submissions or failure to follow up on those submissions constitutes a "procedural flaw" sufficient to warrant additional discovery. The Court further points out that Plaintiff has not argued that Hartford failed to implement written procedures for claim review like the plan administrator in *Locher*. *See id.* In sum, Plaintiff's reliance on *Locher* is misplaced and does not support allowing her to depose a Hartford representative about the Letters.

Finally, Plaintiff's conclusory assertion that Hartford's "appeals process" is "to simply believe its paid experts rather than a claimant's experts under any circumstances" is not a sufficient basis for the Court to compel Hartford to appear for a Rule 30(b)(6) deposition. Pl.'s Mot. at 3; *see Laakso*, 2011 WL 3360033, at *4 (stating that the "cannot obtain discovery outside of the administrative record . . . merely by making conclusory allegations") (citing *Baird*, 2010 WL 3743839 at *9). Plaintiff has not provided any case-specific allegations to support her suggestion that Hartford has a general policy of favoring the opinions of its retained doctors over

other evidence in the administrative record.  It is clear from Plaintiff's motion that she believes

Hartford erred in relying on Dr. Small's MRR to support its adverse benefits determination.  *See*

Pl.'s Mot. at 1-2.  However, this issue goes to the merits of whether Hartford's determination

was arbitrary and capricious, and cannot serve as a basis for additional discovery.  *Murphy*, 2016

WL 526243, at *5 (noting that a court cannot permit "discovery into the substantive merits of the

claim"); *Hamill*, 2012 WL 6757211, at *10 ("[T]he party seeking additional discovery must do

more than merely claim that 'it is needed to determine whether she received a 'full and fair

review.'").

For these reasons, Plaintiff's motion is DENIED to the extent that it seeks to compel

Hartford to produce a Rule 30(b)(6) witness to testify about Hartford's handling of the Letters.

However, the Court will require Hartford to provide limited discovery regarding its procedures,

if any, for reconsidering or reopening claims which have been closed after administrative appeal.

*See generally Schussheim v. First Unum Life Ins. Co.*, No. 09-CV-4858, 2012 WL 3113311, at

*2 (E.D.N.Y. July 31, 2012) (granting the plaintiff's motion to amend her complaint to assert,

*inter alia*, that the defendant violated internal procedures described in its claims manual by

declining to reopen the plaintiff's claim at the administrative level after she submitted a Social

Security Administration award).  Specifically, the Court is directing Hartford to produce, within

twenty-one (21) days of the date of this Order, responsive information regarding:  (1) whether

Hartford has an internal procedure (written or otherwise) for reopening or reconsidering closed

claims; and (2) if such a procedure exists, what that procedure is and whether that procedure was

applied or followed with regard to Plaintiff's claim.  The Court is also requiring Hartford to

produce the relevant portions of its claims manual or any other documents which memorialize its

procedure for reopening closed claims, to the extent such documents exist.

### B. Deposition of Dr. Small

Plaintiff also seeks to conduct a deposition of Dr. Small "to question [him] under oath as to his conversations with Susan Greenberg of Best Physical Therapy." Pl.'s Mot. at 3. Although the thrust of Plaintiff's argument is not entirely clear, she appears to assert that this deposition will reveal that Dr. Small's statements regarding his communications with Best were untruthful and that Dr. Small is biased. *See* Pl.'s Mot. at 3-4. Citing *Joyner v. Continental Casualty Co.*, 837 F. Supp. 2d 233 (S.D.N.Y. 2011), Plaintiff notes that Dr. Small's "peer review bias" may be imputed to Hartford as the Plan's administrator. *See* Pl.'s Mot. at 4.

In its opposition, Hartford states that Plaintiff has "fail[ed] to cite any case law demonstrating that this type of discovery is appropriate or has ever been granted in an ERISA case." Def.'s Opp'n at 4. Also citing *Joyner*, Hartford further argues that, to the extent Plaintiff seeks evidence of Dr. Small's bias, this "is not an appropriate area of inquiry in an ERISA case because it does not inform the issue of *Hartford's* alleged conflict of interest, and Feltington does not argue that it does." *Id.* (emphasis in original).

The Court has reviewed Judge Rakoff's decision in *Joyner* and finds that it supports Defendant's position. In *Joyner*, the plaintiff sought "conflict of interest discovery" on several topics, including "Defendant's selection of Dr. D. Dennis Payne, M.D. to perform the peer review that formed the medical basis for denying Plaintiff's claim." 837 F. Supp. 2d 233 at 241. Judge Rakoff noted that the plaintiff's only argument that the evidence she sought "has a reasonable chance of showing 'specific allegations' of a financial conflict rising to the level of 'good cause' such that the Court can go outside the administrative record is the purported bias of Dr. Dennis Payne who performed the medical peer review that formed the basis of the claim denial." *Id.* However, Judge Rakoff stated:

At this albeit preliminary stage, this purported peer review bias appears unlikely to be sufficient to show 'good cause' for Hartford's conflict of interest. According to defendant, Dr. Payne's review is only one piece of evidence in the record, plaintiff has not identified any medically unsound parts of the opinion, and, according to defendant, on administrative appeal after a blind referral to Dr. Paul F. Howard, M.D., Dr. Howard reached similar conclusions as Dr. Payne, and the Hartford claims specialists ultimately made their own independent conclusions. . . . Absent evidence of a flawed medical opinion, it is not clear why alleged peer reviewer bias should be imputed as a conflict of interest to the insurance company. *See Fortune v. Group Long Term Disability Plan for Emps. of Keyspan Corp.*, 637 F. Supp. 2d 132, 143 (E.D.N.Y. 2009) (acknowledging financial conflict but holding no convincing medical reason to devalue peer reviewers' conclusions), *aff'd* 391 F.A'ppx 74 (2d Cir. 2010).

837 F. Supp. 2d 233 at 241-42 (internal citation omitted). Thus, while peer review bias may be imputed to a plan administrator depending on the circumstances, Judge Rakoff determined that it would be inappropriate to do so under the facts presented in *Joyner*. *See id.*

Considering the circumstances here, the Court concludes that Plaintiff has not shown there is a reasonable chance that deposing Dr. Small will lead to admissible evidence which satisfies the good cause standard. Particularly, Plaintiff has not demonstrated that Dr. Small exhibited peer review bias which may be imputed to Hartford. *See id.* Plaintiff relies heavily on Greenberg's letter disputing Dr. Small's description of his communications with Best. *See* Pl.'s Mot. at 2-3. However, even if the Court assumed that Greenberg's version of events was true and Dr. Small's was false, this discrepancy does not demonstrate that Dr. Small's review of the FCE Report was biased, let alone that his bias can be attributed to Hartford's structural conflict of interest. Similarly, the Court finds no basis to conclude that the other alleged errors in Dr. Small's MRR – *i.e.*, his statements that the FCE Report is unsigned, was anonymously written, and was less than objective – demonstrate that Dr. Small "ceased exercising medical judgment" as Plaintiff contends, *see* Pl.'s Mot. at 3, or that his medical opinion was so "flawed" that his

"alleged peer review bias" can imputed as a conflict of interest to Hartford. *Joyner*, 837 F. Supp. 2d 233 at 242; *see Paris-Absalom*, 2012 WL 4086744, at *2 (citing *Joyner* and holding that "[s]ince plaintiff has presented no argument, let alone evidence, that the data and conclusions in the reports are flawed, her disagreement with any use of the reports by plaintiff does not suffice to show there is a 'reasonable chance' that discovery would yield pertinent information"). Plaintiff states that Dr. Small "did not challenge the methodology utilized in the Best report or the professional opinion rendered," and that he "had no objection that went to the merits of Best's report." Pl.'s Mot. at 2. However, Dr. Small states in the MRR that he found the FCE Report "appears to be less than objective" because its findings were inconsistent with (1) the findings at the examination performed by Dr. Dawodu" and (2) Plaintiff's "activity level displayed on the surveillance videos" observed by Dr. Small. MRR at 000362. The reasonableness of this conclusion, and Hartford's reliance on it, are issues to be explored on a motion for summary judgment or at trial. Ultimately, since Plaintiff has not shown that Dr. Small exhibited peer review bias which can be imputed to Hartford, the Court declines to allow Plaintiff to depose Dr. Small.

Again, it is clear to the Court that Plaintiff disagrees with Hartford's decision to rely on Dr. Small's MRR, particularly, his "version of events" regarding his communications with Best and his analysis of the FCE Report. *See* Pl.'s Mot. at 1-2. However, Plaintiff is not entitled to depose Dr. Small as a means to show that Hartford erred by relying on his statements. *See Murphy*, 2016 WL 526243, at *5; *Hamill*, 2012 WL 6757211, at *10; *see also Lane v. Hartford*, No. 06-CV-3931, 2006 WL 3292463, *2 (S.D.N.Y. Nov. 14, 2006) (precluding discovery outside the administrative record where plaintiff alleged that additional discovery was needed, not to explore a conflict of interest, but only to determine whether she received "full and fair

review"). Plaintiff is free to challenge the propriety of Hartford's reliance on Dr. Small's MRR

in a motion for summary judgment or at trial, as this issue goes to the merits of Hartford's

determination of Plaintiff's benefits claim and the question of whether that determination was

arbitrary and capricious. The Court further notes that the administrative record itself provides a

sufficient basis for Judge Spatt to evaluate whether Dr. Small, in fact, erred when he stated that

the FCE Report was unsigned, anonymous, and less than objective, as Plaintiff alleges. *See, e.g.*,

*Paris-Absalom*, 2012 WL 4086744, at *2 ("To be sure, the Concentra reports have been

produced as part of the administrative record and the reasonableness of Aetna's reliance on the

reports will be reviewed by the Court."). As noted above, if Plaintiff wants the Court to consider

the Letters in determining the merits of this action, that is a separate matter and Plaintiff must

make an appropriate motion seeking such relief.

For these reasons, Plaintiff's request to depose Dr. Small is DENIED.

### C. Plaintiff's Interrogatory

Plaintiff next seeks to compel Hartford to respond the following interrogatories:

> 1) State whether Defendant, Hartford Insurance Company, has both
> discretionary authority and made long term disability payments to
> Plaintiff pursuant to The Plan under Hartford Group Policy
> GL6745701.
>
> 2) State the number of times that Defendant received a medical
> review of a long term disability claim from Dr. Neal Small of the
> University Disability Consortium and the number of times that he
> found the claimant to be disabled.
>
> 3) State the number of times that Defendant received a medical
> review of a long term disability claim from Dr. Olugbenga Dawodu
> and the number of times that he found the claimant to be disabled.

Pl.'s Mot. at Ex. D. The Court will address each interrogatory in turn below.

### 1. Interrogatory No. 1

According to Plaintiff, Hartford should be compelled to answer the first interrogatory because "Hartford has refused to stipulate that it both pays the claim and decides eligibility" under the Plan, "which is a recognized factor for purposes of showing conflict of interest." Pl.'s Mot. at 3. In its opposition, Hartford contends that discovery on this issue is unnecessary because "Hartford has informed plaintiff's counsel on several occasions that it does not dispute that it is a dual role administrator and the Plan documents similarly confirm this to be." Def.'s Opp'n at 5.

The Court finds that the issue raised in the first interrogatory is moot, as Hartford does not dispute that it both evaluates claims for benefits and pays benefits claims under the Plan, and that it is therefore operating under a structural conflict of interest. *See Liyan He*, 304 F.R.D. at 189 (holding that, because "Cigna does not dispute that it has an inherent conflict of interest, inasmuch as it administers a plan and pays benefits out of its own funds . . . , there is no need for discovery into the issue of Cigna's structural conflict of interest") (internal citation, quotation marks, and alterations omitted). As Hartford notes in its opposition, the Plan documents expressly state that Hartford "ha[s] full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy." The Plan, Def.'s Opp'n, Ex. A., at 00024. That admission is on the record. Accordingly, Plaintiff's motion is DENIED AS MOOT to the extent it seeks to compel Hartford to respond to Interrogatory No. 1.

### 2. Interrogatory No. 2

Plaintiff's second interrogatory seeks information regarding (1) the number of times Hartford received medical reviews of long-term disability claims from Dr. Small of UDC, and (2) the number of times that Dr. Small found claimants to be disabled. *See* Pl.'s Mot., Ex. 4.

Plaintiff notes that Dr. Small is employed by UDC, "a company that supplies opinions to disability insurance companies" and that, according to Plaintiff, derived nearly 75% percent of its revenue from Hartford as of February 2006. Pl.'s Mot. at 1, 3. Plaintiff asserts, in essence, that UDC's financial relationship with Hartford and "Hartford's unquestioned acceptance of Dr. Small's opinion," considered in conjunction with Hartford's structural conflict of interest, provide a sufficient basis for Plaintiff to discover information regarding Dr. Small's history of reviewing disability claims for Hartford. *Id.* at 3. Hartford disagrees, arguing that because (1) Hartford did not retain Dr. Small directly, and (2) Plaintiff has not identified information in the administrative record indicating that Hartford's reliance on Dr. Small's report was influenced by "financial bias," Plaintiff is not entitled to the information sought in the second interrogatory. Def.'s Opp'n at 5.

"'Whether a medical advisor to a plan administrator exercises independent judgment or functions as an arm of the administrator is relevant to the issue of arbitrary decision making.'" *Burgio*, 253 F.R.D. at 233 (quoting *Nagele*, 193 F.R.D. at 111). Indeed, courts often consider the relationship between a plan administrator and outside advisors or consultants, such as UDC, in determining whether a conflict of interest influenced the administrator's decision to deny benefits. *See, e.g.*, *Ianniello v. Hartford Life & Acc. Ins. Co.*, No. 10-CV-370, 2011 WL 7139243, at *17-*18 (E.D.N.Y. Aug. 16, 2011) *report and recommendation adopted*, 2012 WL 314872 (E.D.N.Y. Feb. 1, 2012) *aff'd*, 508 F. App'x 17 (2d Cir. 2013) (considering on summary judgment the plaintiff's arguments that "Hartford's reliance on UDC and MES Solutions for its independent peer review services, companies that greatly benefit from Hartford's repeat business, casts doubt on the neutrality of those decisions" and that the opinion of the doctor retained by UDC "should be discredited because he financially benefits from repeat business that

comes from opinions that Hartford likes," but ultimately concluding that, because "Hartford has taken steps to reduce potential bias . . . , the court will consider the conflict in making its determination, but does not believe it to be of great importance") (internal quotation marks and footnote omitted); *Fortune v. Grp. Long Term Disability Plan for Employees of Keyspan Corp.*, 637 F. Supp. 2d 132, 143 (E.D.N.Y. 2009) *aff'd*, 391 F. App'x 74 (2d Cir. 2010) (viewing the findings by two doctors "with an appropriately skeptical eye" because the doctors "were referred to Hartford by UDC" and therefore "may have some financial incentive to deny a participant's claim for long-term disability benefits" because UDC "may derive a considerable percentage of its revenue from Hartford"); *Jacoby v. Hartford Life & Acc. Ins. Co.*, No. 07-CV-4627, 2008 WL 4361256, at *1 (S.D.N.Y. Sept. 24, 2008) (finding that an issue of fact precluding summary judgment existed whether "defendant may have been influenced by a conflict" where the defendant obtained the services of two doctors from UDC, "a company that, as of 2006, derived nearly three quarters of its revenue," and noting that "UDC and the doctors it provides therefore arguably have a financial incentive to provide defendant with reports supporting denials of benefits").

Considering Hartford's structural conflict of interest in conjunction with Plaintiff's allegations regarding the financial relationship between Hartford and UDC, the Court finds that there is a reasonable chance that permitting the requested discovery regarding the number of times Hartford has received medical reviews of long-term disability claims from Dr. Small, as well as the number of times Dr. Small found claimants to be disabled, may lead to evidence that will satisfy the good cause requirement. *Burgio*, 253 F.R.D. at 233 (permitting the plaintiff to conduct discovery regarding "the doctors, consultants, and other medical professionals who reviewed Plaintiff's application for LTD benefits," including information regarding "the number

of times Defendant engaged these individuals to perform medical reviews or examinations of disability claimants as well as the compensation paid to each of them for the performance of such services") (citing *Allison v. Unum Life Ins. Co.*, No. 04-CV-0025, 2005 WL 1457636, at *13 (permitting discovery as to the doctor who reviewed plaintiff's claim for benefits when it was "not clear whether [the doctor] operated under a conflict of interest or if such conflict affected his decision"); *Nagele*, 193 F.R.D. at 111 (requiring production of information regarding defendant's financial arrangements between doctor and defendant, the number of instances the doctor found the claimant disabled, and the number of IMEs conducted by the doctor for defendant)); *see Schrom*, 2012 WL 28138, at *5 (compelling the production of documents concerning the relationship between Guardian and Trinity, the insurance broker, and stating that "[t]he contractual relationship between Guardian and Trinity is surely relevant to such a conflict in this case where Guardian consulted with Trinity in connection with its claims decision"); *Durham v. Prudential Ins. Co. of Am.*, 890 F. Supp. 2d 390, 397 (S.D.N.Y. 2012) (concluding that the plaintiff's allegations, including, *inter alia*, that "Prudential's medical consultants serve only insurance companies," were "sufficiently specific to suggest that Prudential's conflict may have affected its decision on Durham's claim" and that "some additional discovery" was therefore "warranted" on those allegations); *Kagan v. Unum Provident*, No. 03-CV-8130, 2009 WL 3486938, at *3 (S.D.N.Y. Oct. 29, 2009) (permitting interrogatories concerning "the doctors involved with plaintiff's file [which] entail issues of compensation and statistics regarding other Unum Provident disability decisions" as well as "the decision-makers and those involved with plaintiff's termination of benefits," and noting that the discovery requests were "appropriately limited to the issue of a conflict of interest"). Specifically, if Dr. Small often consulted for Hartford and infrequently made findings of disability, "said actions may suggest a conflict of

interest influenced [his] reports and decision-making." *Kagan*, 2009 WL 3486938, at *3

(S.D.N.Y. Oct. 29, 2009) (citing *Hogan-Cross v. Metro. Life Ins. Co.*, 568 F. Supp. 2d 410, 414

(S.D.N.Y. 2008) (finding that "[e]vidence of high rates of benefit denials or terminations

reasonably could lead to further inquiry as to the reasons for those actions, which might prove

either benign or malignant")).

The Court is not persuaded by Hartford's arguments in opposition. Although Hartford

did not retain Dr. Small directly, information responsive to Plaintiff's second interrogatory is still

potentially relevant to the question whether Hartford's relationship with UDC created a conflict

of interest. *See generally Burgio*, 253 F.R.D. at 233 (ordering the defendant to produce

responsive information regarding, *inter alia*, "the number of times Defendant engaged/retained

these [medical professionals] *(directly or through a third party vendor)* to perform a medical

review or examination of a disability claimant between 2003 and 2006") (emphasis supplied).

The Court also finds that Plaintiff is not likely to find information within the administrative

record which speaks to this potential conflict. *See Kagan*, 2009 WL 3486938, at *3 (citing

*Trussel*, 552 F. Supp. at 390; *Mergel v. The Prudential Life Ins. Co. of Am.*, No. 09-CV-00039,

2009 WL 2849084, at *3 (S.D.N.Y. Sept. 1, 2009)); *cf. Durham*, 890 F. Supp. 2d at 397

("[W]hile Prudential contends that Durham's allegations are belied by the administrative record,

the portions of the record Prudential cites do not clearly show the absence of a reasonable chance

that Prudential's conflict affected its decision."). Finally, the Court notes that Hartford has not

asserted that responding to this limited discovery request would be at all burdensome.

Accordingly, Plaintiff's motion is GRANTED to the extent it seeks to compel Hartford to

respond to Interrogatory No. 2. Hartford is hereby ordered to produce, within twenty-one (21)

days of the date of this Order, responsive information regarding: (1) the number of times

Hartford received a medical review of a long-term disability claim from Dr. Neal Small of University Disability Consortium; and (2) the number of times Dr. Small found the claimant to be disabled.

### 3. *Plaintiff's Interrogatory No. 3*

Plaintiff's third interrogatory seeks information similar to the second interrogatory, except with respect to Dr. Dawodu. *See* Pl.'s Mot., Ex. D. Specifically, the third interrogatory directs Hartford to state the number of times it has received medical reviews of long-term disability claimants from Dr. Dawodu and the number of times he found claimants to be disabled. *See id.* Plaintiff has not proffered any arguments as to why she is entitled to this discovery. *See generally* Pl.'s Mot. Hartford, meanwhile, asserts that Plaintiff "has not provided any 'good cause' for this discovery" and "has not explained how the requested discovery will inform the issue of Hartford's purported conflict of interest." Def.'s Opp'n at 5.

As discussed above, a plaintiff may be entitled to discovery regarding the relationship between a plan administrator and third-party doctors retained by the administrator to perform medical examinations upon the plaintiff's showing that such discovery has a reasonable chance of leading to evidence which will satisfy the good cause requirement. *See, e.g.*, *Burgio*, 253 F.R.D. at 233; *Nagele*, 193 F.R.D. at 111. Here, however, Plaintiff has made no attempt to satisfy the "reasonable chance" standard with respect to the information sought in her third interrogatory. Critically, Plaintiff has not alleged that Dr. Dawodu was potentially influenced by a conflict of interest. Dr. Dawodu was not retained by UDC but rather by a different third-party vendor, D&D. Thus, Plaintiff cannot simply ascribe her allegations regarding the relationship between Hartford and UDC to her discovery request regarding Dr. Dawodu. And unlike her allegations concerning Dr. Small, Plaintiff has not alleged that Hartford's relationship with D&D

may have influenced Dr. Dawodu's IME or Hartford's decision to accept its findings. In short, Plaintiff has provided no basis for the Court to grant the extra-record discovery sought in her third interrogatory. Accordingly, Plaintiff's motion is DENIED to the extent it seeks to compel Hartford to respond to Interrogatory No. 3.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's motion for discovery beyond the administrative record is GRANTED, in part, and DENIED, in part, to the extent set forth in this Memorandum and Order. Hartford is directed to comply with the directives set forth in this Memorandum and Order within twenty-one (21) days. The Court previously adjourned the deadline for the parties to submit their proposed Stipulation and Order of Confidentiality until after the Court ruled on Plaintiff's motion. *See* Mar. 3, 2015 Elec. Order. Accordingly, the Court is directing the parties to submit their proposed Stipulation and Order of Confidentiality within fourteen (14) days of this Memorandum and Order.

The Court is setting this case down for a telephone conference on **April 19, 2016 at 11 a.m.** to address whether the parties intend to move for summary judgment and to set the remaining pre-trial deadlines.

**SO ORDERED.**

Dated: Central Islip, New York
March 15, 2016

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge