UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
LISA FELTINGTON,

        Plaintiff,                                    **ORDER**
                                                                              14-CV-06616 (GRB) (JMW)
        -against-

HARTFORD LIFE INSURANCE COMPANY,

        Defendant.
---------------------------------------------------------------X
**WICKS,** Magistrate Judge:

        Before the Court are two motions, to wit, (1) Plaintiff's motion to supplement the administrative record (DE 42); and (2) Defendant's motion to file certain documents—internal policy documents—under seal (DE 65). As this case will soon enough be before the Honorable Gary R. Brown to consider motions for summary judgment, the undersigned held oral argument on both motions on November 29, 2021, and now (1) grants in part Plaintiff's motion to supplement the administrative record because Plaintiff has made a sufficient showing of "good cause" to supplement; and (2) denies Defendant's motion to seal, since it has not sufficiently overcome the strong presumption of public access for the documents.

## FACTUAL BACKGROUND

        Plaintiff filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.,* seeking, *inter alia*, an award of long-term disability benefits under the employee welfare benefit plan provided to employees of the North Shore-Long Island Jewish Hospital ("NSLIJ"). (DE 1 at 1.) As an assistant nursing director at NSLIJ, Plaintiff was the beneficiary of a long-term disability insurance plan (the "Plan") issued by Defendant. (*Id.* at 3.) The Plan provides that Defendant will pay a monthly benefit to Plaintiff "if she is prevented from performing one or more of the Essential Duties of her occupation for 24 months and as a result her current her current monthly earnings were less than 80% of her indexed pre-disability earnings, and that therefore if she in unable to perform the duties of any occupation for which she is qualified by education, training or experience." (*Id.*)

In November 2011, Plaintiff allegedly became disabled within the meaning of the Plan when she experienced lumbosacral disc degeneration, myalgia, cervicalgia, and lumbago. (*Id.*) Plaintiff applied for disability benefits, which Defendant began paying. (*Id.*) It continued to pay Plaintiff benefits until January 10, 2014 when it determined that Plaintiff was no longer eligible. (*Id.*) Plaintiff filed an internal appeal with Defendant, arguing that Defendant erroneously denied her benefit payments. (*Id.*) Defendant denied Plaintiff's appeal on September 26, 2014. (*Id.* at 4.) Plaintiff alleges that Defendant failed to consider numerous medical reports submitted with her appeal, and instead inappropriately relied on an independent examination of a Dr. Neal Small who had never treated or examined Plaintiff. (*Id.* at 4-5.) Having exhausted her administrative remedies, Plaintiff commenced this action seeking an order compelling Defendant to pay the long-term disability payments it allegedly owes Plaintiff.

The present disputes are outgrowths of an earlier discovery kerfuffle resolved by the Honorable A. Kathleen Tomlinson. At that point, Plaintiff sought discovery beyond the administrative record. (*See, e.g.*, DE 40.) Judge Tomlinson—in a thorough and well-reasoned opinion—granted in part and denied in part Plaintiff's request and required Defendant to produce its internal procedure for reopening or reconsidering closed claims. (*Id.* at 27, 38.) Defendant heeded the Court's directives, ultimately leading us to the present motions, the resolution of which are necessary for the summary judgment filings.

1. *Motion to Supplement the Administrative Record*

The first motion before the Court is Plaintiff's motion to supplement the administrative record. (DE 42.) Specifically, Plaintiff seeks to supplement the administrative record with two letters: (1) a letter dated October 14, 2014 from Plaintiff's physical therapist sent to Plaintiff's counsel explaining that Dr. Small never called her back about the examination she performed on Plaintiff; and (2) a letter dated October 16, 2014 from Plaintiff's counsel to Defendant effectively conveying the same information to Defendant. Plaintiff contends that "good cause" exists for supplementing the administrative with these letters because (1) Defendant has a structural conflict of interest by virtue of the fact that it both reviews claims *and* pays plan benefits; and (2) Defendant's denial of Plaintiff's benefits was based, in part, on the basis that Dr. Small's calls were never returned by the physical therapist. (DE 42.) Defendant opposes Plaintiff's motion

and asserts that she has not made the sufficient showing of "good cause" to warrant the admission of the letters into the record. (DE 43.) Specifically, Defendant contends that Plaintiff's assertion that Defendant has a structural conflict of interest is wholly unsupported by the record.

Whether an ERISA administrative decision is reviewed *de novo* or deferentially, the district court's review is typically limited to the evidence that the plan administrator itself considered, *i.e.*, the administrative record. *DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61, 66–67 (2d Cir. 1997) (de novo review); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995) (deferential review). Courts have discretion, however, to admit evidence outside the record if the plaintiff shows "good cause" to do so. *E.g., Krauss v. Oxford Health Plans, Inc.*, 517 F. 3d 614, 631 (2d. Cir. 2008). "A demonstrated conflict of interest in the administrative reviewing body is an example of 'good cause' that may, under certain circumstances, warrant the introduction of additional evidence." *Biomed Pharms., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 831 F. Supp. 2d 651, 658 (S.D.N.Y. 2011) (citing *DeFelice*, 112 F.3d at 67). "'Good cause' to supplement the record may exist when the plan administrator has a conflict of interest, or when the claims review process suffers from procedural irregularities such as a lack of established criteria for determining an appeal, a plan's practice to destroy or discard records, or a plan's failure to state its reasons for denying a claim in its notices to a claimant." *Tritt v. Automatic Data Processing Inc. Long Term Disability Plan*, No. 3:06-cv-2065, 2011 WL 282178, *1 (D. Conn. Jan. 21, 2011) (internal citations omitted). "Good cause" to supplement the administrative record with documents that were created after the record was closed may also exist with a showing of bad faith.[1] *Reid v. Aetna Life Ins. Co.*, 393 F. Supp. 2d 256, 263 (S.D.N.Y. 2005) ("A court may not consider materials that were created after the administrative

---

[1] Defendant's counsel at oral argument noted that "good cause" may exist only where procedural irregularities or a conflict of interest is shown. The Second Circuit has made clear, however, that district courts maintain discretion in admitting evidence outside of the administrative record and that "even purely factual interpretation cases may provide a district court with good cause to exercise its discretion to admit evidence not available to the administrative level if the administrator was not disinterested." *Locher v. Unum Life. Ins. Co. of Am.*, 389 F.3d 288, 294 (2d Cir. 2004). In *Locher*, while the Second Circuit indeed held that "insufficient procedures for internal or appellate review" bolstered a finding of good cause, it *did not* set a bright line rule for what constitutes a conflict of interest and thus good cause. *Id.* at 296. Thus, a showing of bad faith undoubtedly weighs on the existence of a conflict of interest, and therefore may be considered in the Court's good cause determination. *Reid*, 393 F. Supp. at 263; *see Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125–26 (2d Cir. 2003) (discussing defendant's good faith dealing with plaintiff in concluding that the district did not abuse its discretion in finding that no good cause existed to admit additional evidence).

record was closed, absent a showing of bad faith or a conflict of interest.") The burden of establishing good cause in the form of a demonstrated conflict of interest on the part of plan administrator lies with the Plaintiff. *Krizek v. Cigna Grp. Ins.*, 345 F.3d 91, 97–98 (2d Cir. 2003).

Plaintiff has made the showing of "good cause" required to supplement the administrative record. Plaintiff is attempting to supplement the record with two letters that were sent *after* the final administrative decision was rendered, which is typically not permitted unless a showing of bad faith or a conflict of interest is made. *Reid*, 393 F. Supp. 2d at 263. However, Plaintiff seems to have pointed to some indicia of bad faith here: In determining that Plaintiff was capable of performing light work, it appears that Defendant disregard the Functional Capacity Evaluation ("FCE") submitted by the physical therapist because it had not been signed and the physical therapist had not called Dr. Small back, who purportedly reached out a number of times. (DE 42 at 2.) However, the October 14, 2014 letter provided by the physical therapist directly contradicts these statements, evidencing that the FCE stated on the first page of the report that it was conducted by Susan Greenburg *and* that Dr. Small only called the physical therapist once, a call that was returned by the Susan Greenburg. Given these inconsistencies, it appears that the October 14, 2014 letter shows some possible form of bad faith on Defendant's part, and therefore meet the good cause requirement to be consider in addition to the administrative record. Conversely, the October 16, 2014 letter written by Plaintiff's counsel to Defendant contains legal argument and does not at all go to good cause and should therefore *not* be considered with the administrative record.

As such, Plaintiff's motion to supplement the administrative record is granted in part and denied in part. The October 14, 2014 letter from the physical therapist may be considered on summary judgment. The October 16, 2014 letter from Plaintiff's counsel, however, shall not be used to supplement the administrative record.

4

## *2. Motion to Seal*

The second motion before the Court is Defendant's motion to seal certain exhibits in connection with its anticipated summary judgment motion.[2] (DE 65.) Defendant specifically seeks to submit under seal its internal policy as it contains sensitive, proprietary business information that Defendant has developed over the years. (DE 65 at 2.) Plaintiff opposes Defendant's motion, contending that the competitive disadvantage that Defendant relies on in its motion is not enough to overcome the presumption that the public should have access to judicial documents. (DE 60.)

The Second Circuit has established a three-part analysis for determining whether documents relating to a lawsuit should be sealed. *See King Pharm., Inc. v. Eon Labs, Inc.*, No. 04-cv-5540, 2010 WL 3924689, at *4 (E.D.N.Y. Sept. 28, 2010) (internal quotation marks and citation omitted); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119, 124 (2d Cir. 2006). Courts must first determine whether the documents are judicial documents, "to which the public has a presumptive right of access." *King Pharm., Inc.*, 2010 WL 3924689, at *4 (citation omitted). A judicial document is not simply a document filed with the court, but one that is "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch*, 435 F.3d at 119 (internal quotation marks and citation omitted). A document is "relevant to the performance of the judicial function if it would reasonably have a tendency to influence a district court's ruling on a motion . . . without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *See Brown v. Maxwell*, No. 16-cv-3945, 2019 WL 2814839, at *4–5 (2d Cir. July 3, 2019) (internal quotation marks and citation omitted) (emphasis in original). If the documents are judicial documents, the court must next determine the weight of the public's presumptive right of access. *King Pharm., Inc.*, 2010 WL 3924689, at *4 (citation omitted). Finally, the court must balance competing considerations against the presumptive right to access, including "the danger

---

[2] There are two pending motions to seal (DE 59, 65) because Defendant incorrectly filed a fully redacted version of the internal policy in its first filing (DE 59). Pursuant to the EDNY sealing requirements, parties seeking to file documents under seal must file said documents unredacted and under seal in the first instance for the Court's consideration. *United States District Court Eastern District of New Yok Steps for E-Filing Sealed Documents – Civil Cases* (June 29, 2017), https://img nyed.uscourts.gov/files/forms/EfilingSealedCV.pdf. The Court notified counsel and directed the appropriate re-filing, hence the multiple pending motions seeking identical relief.

of impairing judicial efficiency and the privacy interests of those resisting disclosure." *Id.* (citation omitted). In so doing, courts must be cognizant that "the presumption of public access to court documents has the potential to exacerbate . . . harms to privacy and reputation by ensuring that damaging material irrevocably enters the public record." *See Brown*, 2019 WL 2814839, at *3.

The question of whether documents should sealed from public view is ultimately left to the sound discretion of the district court, which should "be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978) (citations omitted). In analyzing privacy interests as a competing consideration against the presumptive right to access, this Circuit has clearly enunciated "that the privacy interests of innocent third parties should weigh heavily in a court's balancing equation. Such interests, while not always fitting comfortably under the rubric 'privacy,' are a venerable common law exception to the presumption of access." *United States v. Amodeo*, 71 F.3d 1044, 1050–51 (2d Cir. 1995).

The *Amodeo* Court articulated three factors to consider in making sealing determination based on privacy interests. First, "courts should consider the degree to which the subject matter is traditionally considered private rather than public. Financial records of a wholly owned business, family affairs, illness, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." *Id.* at 1051. Next, courts should consider "[t]he nature and degree of injury. . . . This will entail consideration not only of the sensitivity of the information and the subject but also of how the person seeking access intends to use the information." *Id.* Lastly, courts should consider the reliability of the information and err on the side of non-disclosure of unverified information. *Id.*

As a threshold matter, the internal policy that Defendant seeks to file under seal is clearly a judicial document, as it will be considered and relied upon in the parties' motion for summary judgment. Thus, a presumption of public access applies to this document, and Defendant has the burden of overcoming this presumption. Defendant contends that being forced to make the internal policy publicly available "will put

6

[Defendant] at a competitive disadvantage by allowing its competitors access to its internal policy without providing any benefit to Hartford or the general public." (DE 65 at 2.)

A cursory review of the internal policy makes clear that it does not contain the sort of competitive, proprietary information required to overcome the presumption of public access and warrant sealing. The internal policy merely states, in sum, that Defendant will not re-visit internal appeal determinations and, likewise, it will not consider any new evidence presented following its initial determination. (DE 65-1.) This, of course, does not rise to the level of sensitive business information that requires protection from public access. Defendant cites to, among other cases, *Kewazinga Corp. v. Microsoft Corp.*, 18-cv-4500-GHW, 2021 WL 1222122, at *6 (S.D.N.Y. Mar. 31, 2021), in asserting that sealing is necessary. However, the information that *Kewazinga* court allowed to be sealed included

> Microsoft's business models, including details of Microsoft's sources of revenue and the amounts of its revenue and sales; quantitative details about Microsoft's user base for certain offerings; quantitative details about usage of specific product features; specific revenue amounts from certain offerings; and information regarding settlement agreements with third parties, which include confidentiality obligations to those third parties.

*Id.* This information—which would have put Microsoft at a competitive disadvantage to third parties upon its public disclosure—is qualitatively different than the internal policy at issue here. Contrary to its assertions, Defendant would not suffer any sort of competitive disadvantage if its competitors saw its internal policy. *See, e.g.*, *Professional, Inc. v. Progressive Cas. Ins. Co.*, No. 3:17-cv-185, 2020 WL 502626, at *3 (W.D. Pa. Ja. 31, 2020) (holding that defendant's assertion "that its claims handling polices [were] unique and essential to maintaining a competitive edge" as insufficient to warrant sealing). Thus, Defendant has not overcome the presumption of public access, and its motion to seal is accordingly denied.

7

## **CONCLUSION**

Based upon the foregoing, Plaintiff's motion to supplement the administrative record is granted as to the October 14, 2014 letter and denied as to the October 16, 2014 letter, and Defendant's motion to seal is denied.

Dated:   Central Islip, New York
 November 30, 2021

**S O   O R D E R E D:**

/s/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge